Ronald P. RICHARDSON,
Petitioner-Appellant,

v.

Les FLEMING, Respondent-Appellee.

No. 80–1958
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 22, 1981.

Ronald P. Richardson, pro se.

Les Fleming, pro se.

Before AINSWORTH, GARZA and SAM D. JOHNSON, Circuit Judges.

GARZA, Circuit Judge:

Appellant, Ronald P. Richardson, incarcerated in a Texas prison, brought this civil rights suit, based upon 42 U.S.C. § 1983[1] against his retained attorney who represented him in two criminal actions in Harris County, Texas. Appellant's complaint, the thrust of which will be discussed below, did not seek release or any other form of modification of confinement, but did seek a declaratory judgment and monetary damages. Appellee, Les Fleming (Richardson's attorney), filed an answer containing a general denial and a defense of statute of limitations.

On May 27, 1980, the District Court *sua sponte* dismissed Richardson's suit for failure to state a claim upon which relief can be granted.[2] Relying upon *Nelson v. Stratton*, 469 F.2d 1155 (5th Cir. 1972), *cert. denied*, 410 U.S. 957, 93 S.Ct. 1432, 35 L.Ed.2d 691 (1973), the District Court held that acts or omissions of retained counsel must fail under § 1983 for lack of state action. As an additional basis for dismissal, the District Court held that § 1983 was not intended as a means for prosecuting legal malpractice claims against attorneys. *O'Brien v. Colbath*, 465 F.2d 358, 359 (5th Cir. 1972). Richardson now appeals the dismissal.

## STANDARD OF REVIEW

In testing the sufficiency of a § 1983 complaint it must be remembered

---

**1.** 42 U.S.C. § 1983 provides:

*Civil action for deprivation of rights.* Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**2.** Appellant does not complain of the Court's dismissal absent a motion in accordance with Rule 12(b)(6) F.R.C.P. and because of the disposition of this case we find it unnecessary to address this issue.

that the complaint should not be dismissed unless it appears that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations of the complaint, especially a *pro se* complaint, must be read in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972), and they must be accepted as true in testing their sufficiency, *Haines v. Kerner, supra, Cruz v. Beto, supra*. A prisoner's *pro se* complaint "however inartfully pleaded" must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). *See Williams v. Rhoden*, 629 F.2d 1099 (5th Cir. 1980); *Jackson v. Reese*, 608 F.2d 159 (5th Cir. 1979); *Slavin v. Curry*, 574 F.2d 1256 (5th Cir. 1978); *Cruz v. Skelton*, 543 F.2d 86 (5th Cir. 1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1977). *Covington v. Cole*, 528 F.2d 1365 (5th Cir. 1976); *See also, Finley v. Staton*, 542 F.2d 250, (5th Cir. 1976); *Williams v. McCall*, 531 F.2d 1247 (5th Cir. 1976); *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976); *Goff v. Jones*, 500 F.2d 395 (5th Cir. 1974); *Reed v. Jones*, 483 F.2d 77 (5th Cir. 1973); and *Madison v. Purdy*, 410 F.2d 99 (5th Cir. 1969).

▋ Keeping this standard in mind, we turn to the content of Richardson's complaint. In summary, Richardson's complaint alleges that he retained Fleming to represent him in two criminal actions involving marijuana and that Fleming promised to represent him to the best of his ability. The complaint goes on to state that Fleming breached this promise and that Fleming failed to give Richardson adequate legal representation under Richardson's plea of not guilty in that Fleming, without the informed consent of his client, stipulat-

ed that Richardson was in possession of marijuana, failed to call Richardson to the stand, stipulated to the testimony of the state's chemist and waived any cross-examination of the chemist, failed to call any witnesses or present any evidence on behalf of Richardson, and falsely represented to the court that Richardson was an agent for the police. Richardson also alleges that Fleming completely failed to prepare any defense whatsoever even though a substantial defense could have been prepared. In addition to these charges of breach of contract and professional malpractice, paragraph 5 of Richardson's complaint alleges, " 'The action on the part of defendant Fleming was part of a well 'concerted plot' to deprive plaintiff of his 'property (money) and his liberty.' " In paragraph 8 of his complaint, Richardson further alleges that "Defendant Fleming did set [*sic*] with total interest for the state . . ." A liberal reading of the allegations contained in paragraphs 5 and 8 of Richardson's complaint, indeed even a fair reading, clearly alleges that Fleming conspired with the prosecution in denying Richardson of his right to adequate legal representation and a fair trial. Richardson's complaint having alleged a conspiracy between his attorney and the prosecution to deny him his rights, we must now ask whether or not such an allegation states a cause of action under 42 U.S.C. § 1983? We think it does.

As mentioned above, the District Court relied upon *Nelson v. Stratton, supra*, which held there is no § 1983 cause of action against a retained attorney because such an attorney "is not acting under color of state law within the purview of the statute." 429 F.2d at 1155. If this had been the only case relied upon by the District Court in its order of dismissal, it might be reasonably inferred that the District Court failed to view Richardson's complaint as having alleged a conspiracy. However, the District Court also took notice of *O'Brien v. Colbath, Hill v. McClellan, United States ex rel. Simmons v. Zilbilich*[3] and, in the order granting

---

**3.** *O'Brien v. Colbath*, 465 F.2d 358 (5th Cir. 1972), held that the ineffective assistance of a

public defender in a criminal case does not raise a claim cognizable under § 1983 because

leave to proceed in Forma Pauperis, also took notice of *Skipper v. Brummer*.[4] The District Court's application of the holdings in those cases to this case leads us to believe that the District Court, while recognizing the allegation of conspiracy, felt that since Fleming had not conspired with a party acting under color of state law, against whom a successful § 1983 cause of action could be pressed because of immunity, the cause of action against Fleming similarly must fail. Although this result would, not too long ago, have been correct, a series of cases in this Circuit now requires a contrary result. A brief review of the case law in this area is in order.

## IMMUNITY

The case of *Lewis v. Brautigam*, 227 F.2d 124 (5th Cir. 1955), was the first case in recent history in this Circuit to deal with the theory of immunity for the actions of a state prosecutor charged in a § 1983 action with conspiring to deny a prisoner's due process rights.[5] In that case, Brautigam, the state's attorney, was accused of having conspired with law enforcement officers in intimidating and coercing a criminal de-

fendant to change his not-guilty plea to a guilty plea. Without directly answering whether or not immunity existed, a distinguished panel of this Court recognized that "a prosecuting attorney, who acts outside the scope of his jurisdiction and without authorization of law, cannot shelter himself from liability by the plea that he is acting under color of office." *Id.* at 129. Fourteen years later in *Madison v. Purdy*, 410 F.2d 99 (5th Cir. 1969), this Court for the first time held that a state's prosecuting attorney generally enjoys official immunity for those acts within the scope of his jurisdiction but, when a state prosecutor enters into a conspiracy with others acting under color of state law (such as law enforcement officers) to deprive someone of their rights, the state prosecutor may be liable not only because he has exceeded his lawful authority but also because he is vicariously liable under principles of agency, partnership and joint venture. *Id.* at 102.

The extent to which a prosecutor's immunity might defeat the liability of a private individual with whom the prosecutor had conspired remained unanswered until *Gued-*

no "state action" is involved and because § 1983 was not intended as a "vehicle for prosecuting malpractice suits against court-appointed attorneys."

*Hill v. McClellan*, 490 F.2d 859 (5th Cir. 1974), involved an alleged conspiracy in a civil action between a judge, a private litigant and the litigant's attorney and held that, because the judge was immune and because the attorney was not a "state functionary", plaintiff's wife was not conspiring with persons against whom a § 1983 claim could be asserted and therefore no § 1983 cause of action was stated.

*United States ex rel. Simmons v. Zibilich*, 542 F.2d 259 (5th Cir. 1976), held that § 1983 does not take cognizance of a malpractice-type claim against court-appointed counsel in a criminal trial because there is no state action.

4. *Skipper v. Brummer*, 598 F.2d 427 (5th Cir. 1979), *cert. granted*, 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980), *cert. vacated*, 444 U.S. 1063, 100 S.Ct. 1003, 62 L.Ed.2d 746 (1980), *remanded per curiam*, 619 F.2d 82 (5th Cir. 1980) (unpublished opinion) involved a § 1983 action against three public defenders alleging a denial of ineffective assistance of counsel. The District Court dismissed the case on the theory that public defenders were immune from § 1983 actions. This Court af-

firmed the dismissal but for the reason that the attorneys were not acting under color of state law.

The Supreme Court granted certiorari but, while the case was pending before the Court, new facts emerged concerning whether or not one of the attorneys involved was a licensed attorney. Upon these changed circumstances, the Supreme Court vacated its judgment and remanded the case to this Court which, in turn, remanded the case to the District Court for further proceedings. Although the Supreme Court did not reverse the rationale of this Court in *Skipper*, the validity of the holding in *SKipper* is now questionable particularly since the Supreme Court's decision in *Cuyler v. Sullivan* (see note 9 infra).

5. *Lewis v. Brautigam, supra*, was also the first case in this Circuit to squarely hold that a conspiracy, by persons acting under color of state law, which actually deprives any rights, privileges or immunities secured by the Constitution and the laws may be actionable under 42 U.S.C. § 1983 regardless of a class-based animus which is required for a conspiracy cause of action under 42 U.S.C. § 1985. *See also Nesmith v. Alford*, 318 F.2d 110 (5th Cir. 1963), *cert. denied*, 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964).

*ry v. Ford,* 431 F.2d 660 (5th Cir. 1970), wherein this Court held that a private person alleged to have conspired with a state prosecutor, who is entitled to immunity because the acts complained of fell within the scope of his jurisdiction, cannot be held liable since the private person had not conspired with persons against whom a valid claim could be stated. *Id.* at 664. In other words, the opinion qualified the vicarious liability of a state prosecutor as set forth in *Madison v. Purdy, supra,* by holding that the color of state law, under which a state prosecutor acted, would not be imparted to a co-conspiring private individual even for the limited purpose of holding only the private individual liable. This legal rule became known as the doctrine of derivative immunity.

The rationale of *Guedry v. Ford, supra,* continued as the law in this Circuit [6] until and after [7] the Supreme Court's decision in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), which granted absolute immunity from § 1983 liability for a state prosecutor acting within the scope of his duties in initiating and prosecuting a case.[8]

The trend continued in this Circuit until this Court's opinion in *Slavin v. Curry,* 574 F.2d 1256 (5th Cir. 1978), *reh. en banc denied,* 583 F.2d 779 (5th Cir. 1978). That case involved a § 1983 suit filed by Slavin, a criminal defendant, against the trial judge, state prosecutors, retained and appointed counsel, court reporters, court-appointed investigator, police officers and witnesses alleging a single conspiracy to manufacture and prosecute him for false charges and for various other acts aimed at denying him his due process rights. In writing for the court, Judge Charles Clark discussed the vicarious liability under § 1983:

> The contention that a conspiracy existed which deprived the petitioner of rights guaranteed by federal law makes each member of the conspiracy potentially liable for the effects of that deprivation. Liability arises from membership in the conspiracy and from traditional notions that a conspirator is vicariously liable for the acts of his co-conspirators. Liability does not arise solely because of the individual's own conduct. Some personal conduct may serve as evidence of membership in the conspiracy, but the individual's actions do not always serve as the exclusive basis for liability. *It is therefore not sufficient justification to say that a claim against a particular defendant must be dismissed because that defendant would be immune from liability for his own conduct. Additional inquiry is required to determine whether the immunity extends also to participation in a*

6. *See* the cases cited in footnote 3.

7. In *Humble v. Foreman,* 563 F.2d 780 (5th Cir. 1977), this court held that a § 1983 action could not be pursued against a retained attorney conspiring with the immune state prosecutor because the attorney had not conspired with a person acting under color of state law against whom a valid claim could be pressed. And again in *Perez v. Borchers,* 567 F.2d 285 (5th Cir. 1978), this Court affirmed the dismissal of a complaint alleging a conspiracy between state prosecutors and private citizens because the private citizens had not conspired with persons against whom a valid claim could be stated.

8. The immunity of a prosecutor has been clarified or extended in *Bruce v. Wade,* 537 F.2d 850 (5th Cir. 1976) (seeking an indictment and presentation of witnesses and documentary evidence); *Conner v. Pickett,* 552 F.2d 585 (5th Cir. 1977) (involvement in accepting a guilty plea); *Humble v. Foreman, supra,* (involvement

in the plea bargaining process); *Prince v. Wallace,* 568 F.2d 1176 (5th Cir. 1978) (knowing use of perjured testimony, deliberately withholding exculpatory information, and failure to make full disclosure of facts); *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir. 1979) (initiating, investigating and pursuing a criminal prosecution and handling its appeal); and *Cook v. Houston Post,* 616 F.2d 791 (5th Cir. 1980) (interviewing grand jury witnesses).

However, prosecutorial immunity has been negated or qualified in *Lewis v. Brautigam, supra,* (coercing a not guilty plea to a plea of guilty); *Madison v. Purdy, supra,* (conspiracy to manufacture charges in order to deny equal protection and due process of law); *Slavin v. Curry,* 574 F.2d 1256 (5th Cir. 1978) (preparation, supervision, or alteration of the trial transcript); *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980) (participation in search and seizure and defamatory public statements prior to initiation of judicial process).

conspiracy. *For example, private individuals may not be held liable under section 1983 for their conduct. See, e. g., Greco v. Orange Memorial Hospital Corporation*, 513 F.2d 873, 877–78 (5th Cir.) *cert. denied*, 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975); *Hill v. McClellan*, 490 F.2d 859 (5th Cir. 1974). *They may nevertheless be held liable if they conspired with a person who acted under color of state law. Taylor v. Gibson, supra*, 529 F.2d at 715.

Following this reasoning, the Court went on to hold that Slavin's attorney incurred no § 1983 liability in his role as a public defender because no state action was involved. However, the Court held that Slavin's attorney could be held vicariously liable for the actions of other conspirators who might themselves be immune from prosecution. While not expressly overruling *Guedry v. Ford, supra*, the opinion did subtly stand for the proposition that the color of state law necessary to hold a private co-conspiring individual liable under § 1983 would not be eliminated from the plaintiff's case simply because one or more of the other co-conspirators, acting under color of state law, were immune themselves from liability under § 1983.

Any uncertainty in this area was clarified in *Sparks v. Duval County Ranch Company Inc.*, 604 F.2d 976 (5th Cir. 1979) (en banc), *aff'd sub nom., Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), in which this Court expressly overruled the doctrine of derivative immunity in § 1983 actions and held that a private person who conspires with a person acting under color of state law, even though the latter party may be immune from liability for his participation in the conspiracy, may be held liable for damages for his participation in the

conspiracy. In reaching its holding, the Court quoted from *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) wherein the Supreme Court declared that:

a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents..."

398 U.S. at 152, 90 S.Ct. at 1605–1606, 26 L.Ed.2d at 151, *quoting United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).

Since the *Sparks* decision this Court has directly held that private attorneys alleged to have conspired with immune State officials may be held liable under § 1983. *Henzel v. Gerstein*, 608 F.2d 654 (5th Cir. 1979). *See Williams v. Rhoden*, 629 F.2d 1099 (5th Cir. 1980). *Accord Cook v. Houston Post*, 616 F.2d 791 (5th Cir. 1980).

It is now clear that the doctrine of derivative immunity will no longer operate to defeat the state action requirement necessary to hold Appellee Fleming liable for his alleged participation in a conspiracy to deny Richardson of his rights.[9] We, therefore, hold the District Court erred in dismissing the case against Fleming on this ground. Although the basis underlying the District Court's dismissal was erroneous, a proper disposition of this case requires us to also examine the area of exhaustion of state remedies regarding Richardson's complaint.

---

**9.** Because Richardson's complaint adequately alleges a denial of his rights based upon "state action" via a conspiracy between his attorney and the state prosecutor, and because the proper disposition of this case would not otherwise be affected, we do not reach the provocative issue of whether or not "state action" is involved in a § 1983 cause of action when the state obtains a criminal conviction of a defendant represented by ineffective counsel. In

*Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), the Supreme Court, in a 28 U.S.C. § 2254 habeas corpus case, recently held that "state action" is involved in a criminal conviction resulting from ineffective assistance of counsel regardless of whether the attorney is retained or appointed. *See Henderson v. Fisher*, 631 F.2d 1115 (3rd Cir. 1980) *(see also note 4 supra)*.

372

## EXHAUSTION

In determining whether the doctrine of exhaustion of state remedies applies to this case, we must again look to the content of Richardson's complaint. As we noted earlier the complaint charges professional malpractice, breach of contract and charges a conspiracy to deny Richardson of effective assistance of counsel and a fair trial. Whether or not the breach of contract and professional malpractice claims which might constitute ineffective assistance of counsel are directly actionable under § 1983, or are simply within the District Court's pendent jurisdiction, remains an open question.[10] However, Richardson's charges of denial of effective assistance of counsel and a fair trial raise the question of whether 42 U.S.C. § 1983 is an available remedy even though Richardson asks only for monetary damages and in no way seeks to directly challenge the legality or duration of his confinement.

In *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), state prisoners filed a § 1983 action challenging the constitutionality of disciplinary actions taken against them and deprivation of their good conduct time credits by prison authorities. The Supreme Court held that a state prisoner's challenge in federal courts to the fact or duration of his confinement because of the alleged unconstitutionality of state administrative action, seeking either immediate release from that confinement or the shortening of its duration, cannot be made

by suit under the Civil Rights Act (42 U.S.C. § 1983), but must be made under the federal habeas corpus statute (28 U.S.C. § 2254), which requires that he first seek relief in a state forum if a state remedy is available.[11] The Court went on to note, however, that since habeas corpus is not an appropriate or available federal remedy for recovering damages for mistreatment or for illegal administrative procedures, a damage action by a state prisoner can be brought under the Civil Rights Act (42 U.S.C. § 1983) in federal court without any requirement of prior exhaustion of state remedies.[12] The *Preiser* case did not however squarely deal with a § 1983 action solely for monetary damages based upon facts which might collaterally challenge the validity or legality of the prisoner's arrest, trial, or imprisonment.

This unanswered question was squarely faced by this Court in the companion cases of *Fulford v. Kline,* 529 F.2d 377 (5th Cir. 1976), *adhered to en banc,* 550 F.2d 342 (1977) and *Meadows v. Evans,* 529 F.2d 385 (5th Cir. 1976), *adhered to en banc,* 550 F.2d 345 (1977), *cert. denied,* 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977). Both *Fulford* and *Meadows* involved prisoner's § 1983 actions seeking monetary damages for alleged constitutional violations of their rights. *Fulford* involved the withholding at trial of possible exculpatory evidence and *Meadows* involved an involuntary guilty plea stemming from coercion and bribery of

10. In the recent case of *Parratt v. Taylor,* —— U.S. ——, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that loss of *property* due to negligent state action does not provide grounds for a § 1983 cause of action when an adequate tort claims procedure exists to compensate for the loss. The Supreme Court, however, did not address the issue of whether or not loss of *liberty* due to negligent state action provides a basis for a § 1983 cause of action where no adequate tort claims or other civil remedy exists. Upon remand the District Court may desire to address the issue posed in note 9—whether state action exists as a basis for proceeding against either retained or appointed attorneys and, if so, whether a § 1983 cause of action for negligent deprivation of liberty exists in addition to Richardson's common law breach of contract and professional malpractice claims.

11. The rationale of the *Preiser* case had already been articulated by this Court in *Shank v. Spruill,* 406 F.2d 756 (5th Cir. 1969) and *Alexander v. Emerson,* 489 F.2d 285 (5th Cir. 1973). *See also, Gardner v. Luckey,* 500 F.2d 712 (5th Cir. 1974).

12. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court held that in a civil rights suit brought under § 1983 by state prisoners the federal courts may consider the validity of procedures for depriving those prisoners of good-time credits and may, short of ordering the actual restoration of good-time already cancelled, fashion appropriate remedies, such as a declaratory judgment, for any constitutional violations ascertained.

a witness. After examining the *Preiser* and *Wolff* cases and relying on the "exigencies of federalism", a majority [13] of this Court held that the propriety of a prisoner's § 1983 action is not to be determined solely on the basis of the relief sought, i. e., monetary damages as opposed to relief from confinement, but instead the federal courts must examine the basis of the complaint and determine whether the claim, if proven, would factually undermine or conflict with validity of the state court conviction which resulted in the prisoner's confinement. If the basis of the § 1983 claim does go to the constitutionality of the state court conviction, the exclusive remedy is habeas corpus relief with the comity inspired prerequisite of exhaustion of state remedies. The majority concluded that both Fulford's and Meadows' allegations of illegality involved issues going to the validity of their then presently valid convictions and, therefore, both would have to exhaust their available state habeas corpus remedies before seeking § 1983 relief in federal court.[14]

Since the *Fulford* and *Meadows* decisions this Court has applied and clarified their holdings in several cases. For example, in *Conner v. Pickett*, 552 F.2d 585 (5th Cir. 1977) we held that, although habeas corpus relief is the exclusive initial cause of action where the basis of the § 1983 claim goes to the constitutionality of the state court conviction, where the plaintiff is no longer in custody, habeas corpus is unavailable and, therefore, the *Fulford-Meadows* doctrine of exhaustion presents no barrier to a § 1983 suit. Other cases since *Fulford* and *Meadows* have consistently held that any § 1983 action which draws into question the validity of the fact or length of confinement must be preceded by exhausting state remedies. *Grundstrom v. Darnell*, 531 F.2d 272 (5th Cir. 1976); *Watson v. Briscoe*, 554 F.2d 650 (5th Cir. 1977); *Robinson v. Richardson*, 556 F.2d 332 (5th Cir. 1977); *Johnson v. Hardy*, 601 F.2d 172 (5th Cir. 1979); *Keenan v. Bennett*, 613 F.2d 127 (5th Cir. 1980); *Delaney v. Giarruso*, 633 F.2d 1126 (5th Cir. 1981); *Courtney v. Reeves*, 635 F.2d 326 (5th Cir. 1981). On the other hand, these same cases have consistently recognized that a § 1983 action which does not challenge the fact or duration of confinement may proceed without exhaustion of state remedies. In the event a § 1983 action states a combination of claims some of which are subject to the *Fulford-Meadows* doctrine and some of which are not, those which are not are to proceed and, for those which are, the District Court should observe due regard of the prisoner's claims regarding statute of limitations problems in deciding whether to stay the action pending state exhaustion or to dismiss it.[15] *See Johnson v. Hardy, supra; Grundstrom v. Darnell, supra.*

It appears that Richardson's complaint regarding ineffective assistance of counsel and unfair trial fall within the scope of the *Fulford-Meadows* doctrine in that his allegations, if proven, would go directly to the constitutionality of his confinement. Therefore, this case shall be remanded to the District Court for further proceedings not inconsistent with this opinion.

## COLLATERAL ESTOPPEL

As a final matter in this opinion we feel it necessary to briefly discuss a relatively

13. See the dissenting panel opinions of Judge Tuttle, 529 F.2d at 382 and 529 F.2d at 386 and the en banc dissenting opinions of Judge Tjoflat, 550 F.2d at 343 and 550 F.2d at 346.

14. Meadows' § 1983 complaint also sought damages for deprivation of civil rights due to prison conditions. To the extent these claims were unrelated to his plea of guilty, he was allowed to proceed with these claims on remand.

15. It has previously been held that Article 5535, Tex.Rev.Civ.Stat.Ann. (Vernon's Supp.1979) tolls the two year statute of limitations in § 1983 actions for prisoners. *Campise v. Hamilton*, 382 F.Supp. 172 (S.D.Tex.1974), *appeal dismissed*, 541 F.2d 279 (5th Cir. 1976), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977); *Grundstrom v. Darnell*, 531 F.2d 272 (5th Cir. 1976); *Bryant v. Potts*, 528 F.2d 621 (5th Cir. 1976). However, more recent decisions have held Article 5535 does not or may not apply. *Miller v. Smith*, 431 F.Supp. 821 (N.D.Tex.1977), *vacated and remanded*, 615 F.2d 1037 (5th Cir. 1980); *Stephens v. Curtis*, 450 F.Supp. 141 (S.D.Tex.1974).

new development in prisoner's civil rights litigation. Although not a part of this case as it presented itself to us, the affirmative defense of collateral estoppel may very well play a part in this case upon remand and in other similar cases in the future.

Over the past few years a line of authority in this Circuit has held that collateral estoppel may form the basis for defense to a prisoner's § 1983 complaint wherein the alleged deprivation of rights was litigated in the original criminal trial and might have been challenged in a direct appeal or through a habeas corpus attack on the conviction. *Courtney v. Reeves, supra; Delaney v. Giarrusso, supra; Martin v. Delcambre*, 578 F.2d 1164 (5th Cir. 1978); *Meadows v. Evans*, 550 F.2d 345, 349–353 (5th Cir. 1977) (en banc) (Tjoflat, J., concurring in part and dissenting in part), *cert. denied*, 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977); *Covington v. Cole*, 528 F.2d 1365 (5th Cir. 1976), *reh. en banc denied*, 533 F.2d 1135 (5th Cir. 1976); *Brazzell v. Adams*, 493 F.2d 489 (5th Cir. 1974); *Jones v. Bales*, 480 F.2d 805 (5th Cir. 1973), *aff'g*, 58 F.R.D. 453 (N.D.Ga.1972). Although some of the above-mentioned cases have discussed in some detail the applicability of collateral estoppel to a § 1983 action, most of them have simply stated that collateral estoppel is an available defense.

■ In the recent opinion of *Allen v. McCurry*, —— U.S. ——, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court held that the affirmative defense of collateral estoppel is available to § 1983 defendants when in the criminal trial the state court has given the parties a full and fair opportunity to litigate federal claims and has clearly decided an issue of fact or law necessary to its judgment. In its opinion, the Court clearly noted that, while some issues

of law or fact regarding a criminal defendant's arrest and trial might necessarily have been decided as a prerequisite to a judgment, other issues arising out of an arrest or trial might not necessarily have been decided in reaching a particular verdict or judgment.[16] *Id.* n.2. Furthermore, the Court held that the availability of collateral estoppel as an affirmative defense would not prevent a § 1983 claimant from litigating in federal court an issue he might have raised but did not raise in his criminal trial. *Id.* n.5. The Court also pointed out that the traditional exceptions or qualifications to the doctrine of collateral estoppel might ultimately defeat its successful application. *Id.* n.7. While not all exceptions or qualifications can be mentioned here, it obviously follows from this reasoning that collateral estoppel would have no application in a case where an alleged illegality occurred during an arrest, search or other criminal proceedings but such illegality was judicially found to be harmless or not necessarily controlling of a criminal defendant's guilt nor would collateral estoppel apply to a situation where, although certain illegal or unconstitutional acts against a criminal defendant may have occurred, the defendant has chosen not to place those acts in issue in the trial of his case.

■ Or, in the event the criminal defendant has placed those acts in issue in the trial of his case and the jury or court returns a general verdict not necessarily inconsistent with those acts of illegality alleged by the criminal defendant, it would be incumbent upon the § 1983 defendant to affirmatively establish that the jury's or court's verdict did in fact necessarily resolve those allegations against the criminal defendant.[17] *Cf. Brazzell v. Adams, supra.*

---

**16.** The Supreme Court's cautious application of collateral estoppel to a § 1983 complaint is consistent with this Court's prior statements giving detailed consideration to the issue. As Judge Tjoflat noted in *Meadows v. Evans, supra*, collateral estoppel will be allowed "if the legality of the arrest or search was previously litigated in the context of a criminal proceeding" and those issues "were necessarily resolved against" the defendant. 550 F.2d at 350. *See also Jones v. Bales, supra.*

**17.** An obvious example of such a situation might occur where a confession is coerced or tortured from a criminal defendant and the issue of voluntariness of the confession is placed before the jury by the defense but sufficient evidence, unconnected or untainted by the confession, exists to convict the defendant.

In sum, we believe that while collateral estoppel does now exist as an affirmative defense to a § 1983 action, its applicability and sufficiency as an affirmative defense will have to be tested on a case by case basis as it arises in future § 1983 litigation. We intimate no opinion, nor could we on the record before us, as to whether or not the doctrine of collateral estoppel is an appropriate defense in this case.

## CONCLUSION

On remand of this case the District Court should determine whether or not Richardson remains in custody. If not, the *Fulford-Meadows* exhaustion requirement places no obstacle to the continuance of Richardson's suit. On the other hand, if Richardson is in custody, then the *Fulford-Meadows* exhaustion requirements may be applicable to Richardson's allegations which indirectly challenge the legality of his confinement—the charges of conspiracy to deprive him of effective assistance of counsel and a fair trial. As to these charges the District Court should inquire and Richardson should present evidence showing whether or not these allegations have been presented in the state courts of Texas either in his direct criminal appeal or in a subsequent state habeas corpus proceeding. If such charges have been presented to the state courts of Texas and resolved, and if Richardson has thereafter exhausted his federal habeas corpus remedies, then the District Court may allow Richardson to proceed with his cause of action.

If however, Richardson's allegations have not been presented to the state courts in his challenge to his conviction, then Richardson must proceed to present these matters in the state courts (followed by his federal habeas corpus remedies) prior to receiving consideration of them in his § 1983 action for purposes of collecting monetary damages. In the event Richardson is required to proceed in the state courts, the District Court should consider the effects of the Texas statute of limitations in deciding whether to dismiss Richardson's complaint without prejudice or whether to hold his complaint in abeyance pending state proceedings. Once Richardson has exhausted his state and federal habeas corpus remedies, he may then proceed under § 1983 for those charges of conspiracy to deny him effective assistance of counsel and a fair trial.

As to Richardson's complaint of breach of contract and professional malpractice, the District Court should determine whether or not it has the jurisdiction to hear such claims under its pendent powers either immediately upon remand or later in the event of a stay pending further state proceedings.

REMANDED for further proceedings not inconsistent with this opinion.

---

The jury might well believe the confession to have been illegally obtained and have excluded it from their consideration pursuant to a *Jackson v. Denno* instruction, yet might consistently find the other evidence sufficient to convict the defendant.